**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

GUCCI AMERICA, INC.; BALENCIAGA,
S.A.; BALENCIAGA AMERICA, INC.;
BOTTEGA VENETA, INC.; and YVES SAINT
LAURENT AMERICA, INC.,

                Plaintiffs,

               v.

BAGSMERCHANT, LLC;
BAGSMERCHANT.CO; BAG STORE LTD
a/k/a WWW.BAGS-STORE.COM; YUNJING
LLC; AUTHENTICTRADING LTD; YI
WANG; WU XIANHUI; YU ZHANG; JASON
JAMES a/k/a JASON MIOTO a/k/a JERMEN
MIOTO; WWW.BAGSDEAL.COM; all doing
business as WWW.BAGSMERCHANT.COM;
ABC COMPANIES; and JOHN DOES,

                Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 2911 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

        Non-parties China Merchants Bank ("CMB") and Bank of China

("BOC," and collectively, the "Banks") have moved pursuant to Federal Rules of

Civil Procedure 59(e), 60(b), and 24(a) and New York Civil Practice Law and

Rules ("CPLR") section 5240 to modify or set aside the July 11, 2011 default

judgment (the "Default Judgment") entered against defendants "insofar as the judgment directs non-party foreign banks including CMB and BOC to turn over any property of the defaulting Defendants that those banks may hold abroad."[1] Plaintiffs oppose the motion on the grounds that: (1) the motion is untimely; (2) the Banks lack standing to alter or amend the judgment; and (3) a court sitting in New York has authority to direct a bank over which it has personal jurisdiction to bring assets into New York to satisfy a judgment.[2]  The Banks' motion is granted in part.

## II.   BACKGROUND

Plaintiffs brought suit on April 5, 2010, alleging that defendants sold counterfeit versions of plaintiffs' products on web sites, in violation of U.S. trademark laws.  On April 12, 2010, Judge Deborah Batts granted plaintiffs' request for an *ex parte* temporary restraining order ("TRO") directing defendants to refrain from various infringing acts and restraining "Defendants and . . . any banks, . . . from transferring, disposing of, or secreting any money . . . or other assets of Defendants or otherwise paying or transferring any money . . . or other

---

[1]     Memorandum of Law of Non-Parties China Merchants Bank and Bank of China in Support of Their Motion to Modify or Set Aside the Court's Default Judgment ("Bank Mem.") at 1.

[2]     Plaintiffs' Memorandum of Law in Opposition to the Motion of Non-Parties China Merchants Bank and Bank of China to Modify or Set Aside the Court's Default Judgment ("Pl. Mem.") at 1-2.

assets to any of the Defendants, or into or out of any accounts associated with or utilized by any of the Defendants."[3]  On April 27, 2010, Judge Batts extended the terms of the TRO (the "TRO Extension Order").[4]  On May 5, 2010, plaintiffs delivered the TRO and TRO Extension Order to CMB's New York branch ("CMBNY") with a letter informing CMB that it was required to restrain all accounts used by defendants.[5]

On May 23, 2010, Judge Batts issued a Preliminary Injunction ("PI") containing a nearly identical asset restraint provision to that contained in the TRO and TRO Extension Order.[6]  Plaintiffs served BOC with the PI and a Rule 45

---

[3]      TRO [Dkt. No. 3] at 6-7.  The TRO provided that "upon two (2) days written notice to the Court and Plaintiffs' counsel, any Defendant may appear and move for the dissolution or modification of any provisions of this Order concerning the restriction upon transfer of Defendants's assets upon appropriate evidentiary showing by Defendants."  *Id.* at 7.

[4]      *See* TRO Extension Order [Dkt. No. 5].

[5]      *See* 5/5/10 Letter from J. Halter to CMB, Ex. D to 8/8/11 Declaration of Dwight A. Healy in Support of Motion to Modify or Set Aside the Court's Default Judgment ("Healy Decl.").

[6]      *See* Preliminary Injunction and Order Authorizing Expedited Discovery ("PI Order") [Dkt. No. 9] at 7-8.  The PI provided that "upon two (2) days written notice to the Court and Plaintiffs' counsel, any third party and Defendants may appear and move for the dissolution or modification of any provisions of this Order that impact upon it."  *Id.* at 10.

subpoena at their New York branch ("BOCNY") on October 19, 2010[7] and served

CMBNY with the PI and a Rule 45 subpoena on October 21, 2010.[8]  The Banks

each served objections and responses to the Rule 45 subpoenas and notified

plaintiffs that they had found no responsive documents in their New York

branches.[9]  Plaintiffs did not move to compel or otherwise challenge the

responses.[10]

On July 8, 2011, Judge Batts entered a Default Judgment against

defendants, which included a permanent injunction, equitable accounting and

statutory damages of $7.8 million.[11]  The Default Judgment provided:

> That, in accordance with Rule 64 of the Federal Rules of Civil
> Procedure, 15 U.S.C. § 1116(a), Article 52 of New York State's

[7]     *See* Bank Mem. at 4.  *Accord* 10/19/10 Letter from J. Halter to COB, Ex. 5 to 9/9/11 Declaration of Jennifer C. Halter in Opposition to Motion to Set Aside Default Judgment ("Halter Decl.").

[8]     *See* 10/21/10 Letter from J. Halter to CMB, Ex. 3 to Halter Decl.

[9]     *See* Objections and Responses to Rule 45 Subpoena Served on China Merchants Bank, New York Branch, Ex. H to Healy Decl.; Response to Rule 45 Subpoena Served on Bank of China, New York Branch, Ex. B to Declaration of Lanier Saperstein in Support of Motion to Set Aside Judgment ("Saperstein Decl.").  The Banks notified plaintiffs that they did not have possession custody or control over documents outside the New York branches and objected to the extent that producing documents would violate applicable domestic or foreign law.  *See id.*

[10]     *See* Healy Decl. ¶ 12; Saperstein Decl. ¶ 10.

[11]     *See* Default Judgment [Dkt. No. 19].

4

> Civil Practice Law and Rules, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all Defendants' Asset Holders . . . who receive notice of this order by personal service or otherwise are ordered to liquidate . . . and pay the value of such Defendants' Assets to Plaintiffs . . . regardless of whether the Defendants' Assets are located in the United States or abroad.[12]

On August 8, 2011, the Banks moved to modify or set aside the Default Judgment "insofar as the judgment directs non-party foreign banks including CMB and BOC to turn over any property of the defaulting Defendants that those banks may hold abroad."[13]  The case was transferred to this Court on September 11, 2012.[14]

## III.  APPLICABLE LAW

### A.    Section 5240 of the CPLR[15]

Section 5240, made applicable to this federal action pursuant to Federal Rule of Civil Procedure 69, provides that "the court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending

---

[12]      *Id.* at 4, 8-9.

[13]      Bank Mem. at 1.

[14]      *See* Dkt. No. 32.

[15]      Plaintiffs do not dispute that this is an appropriate procedural vehicle for consideration of the propriety of the turnover provision in the Default Judgment.  *See* Pl. Mem. at 16 n.13.

5

or modifying the use of any enforcement procedure."[16]

### B.      Procedure for Turnover Orders Under Section 5225(b)

Article 52 of the CPLR "governs the enforcement of money

judgments and orders directing the payment of money."[17]  Enforcement under

section 5225(b), which deals with property not in the possession of the judgment

debtor, "requires a special proceeding brought by the judgment creditor against the

garnishee."[18]  The New York Court of Appeals explained that "[t]he reason for this

procedural distinction is that the garnishee, not being a party to the main action,

has to be independently subjected to the court's jurisdiction."[19]

Section 403 of the CPLR provides that garnishees must be served, in

the same manner as a summons, with a notice of petition specifying the time and

place of the hearing on petition, and any accompanying affidavits, at least eight

days in advance of the time at which the petition is noticed to be heard.[20]  The

---

[16]      C.P.L.R. § 5240.  Rule 69(a)(1) provides that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

[17]      *Koehler v. Bank of Bermuda Ltd.*,12 N.Y.3d 533, 537 (2009)

[18]      *Id.* at 541.

[19]      *Id.*

[20]      *See* C.P.L.R. §§ 403(a)-(c).  Alternatively, the court may grant an order to show cause to be served in lieu of a notice of petition.  *See id.* § 403(d).

special proceeding culminates in a judgment which runs directly against the respondent.[21]

## IV.   DISCUSSION

Defendants have standing as "interested person[s]" to request "an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure" against them.[22]  The portion of the Default Judgment directing "all Defendants' Asset Holders . . . who receive notice of this order by personal service or otherwise are ordered to liquidate . . . and pay the value of such Defendants' Assets to Plaintiffs"[23]  was the equivalent of an ex-parte turnover order, for which third-party asset holders are entitled to a special proceeding involving notice and a hearing under section 5225(b).

The Default Judgment is void insofar as it directs non-parties to liquidate assets of defaulting defendants without affording the non-parties the safeguards of section 5225(b).  To the extent that plaintiffs wish to enforce the

---

[21]     *See id.* § 411.

[22]     *Cf. Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 85 F.Supp. 42 (S.D.N.Y. 1994) (entering a default judgment against defendants and noting that if the measures for collection of legal fees therein forced defendant into bankruptcy, the proper procedure was to apply for a payment schedule pursuant to Rule 69(a) and C.P.L.R. § 5240).

[23]     Default Judgment at 8-9.

terms of the Default Judgment against the Banks, they may petition to do so in accordance with section 5225(b).

## V.     Conclusion

The Banks' motion is granted and the Default Judgment is set aside to the extent that it operates as an ex-parte turnover order.[24]  The Clerk of the Court is directed to close this motion (Docket Entry # 21).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       September 27, 2012
             New York, New York

---

[24]     This Order should not be construed to question the Court's authority to freeze the assets held by third-parties pursuant to the TRO or PI, nor should it be read to question the Court's authority, upon proper procedure, to enforce the full scope of the Default Judgment.

**- Appearances -**

**For Plaintiffs**:
**Gibson, Dunn & Crutcher, LLP**

Robert L. Weigel, Esq.
Howard S. Hogan, Esq.
Jennifer C. Halter, Esq.
Anne M. Coyle, Esq.
200 Park Avenue, 51st9 Floor
New York, New York 10166
(212) 351-4000

**For Non-party China Merchants Bank**:
**White & Case LLP**

Dwight A. Healy, Esq.
Marika Maris, Esq.
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

**For Non-party Bank of China**
**Allen & Overy LLP**

Lanier Saperstein, Esq.
Pamela Rogers Chepiga, Esq.
Andrew H. Reynard, Esq.
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300